# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DAVID BROXTERMAN,

     Petitioner,

v.                              Case No. 8:20-cv-2940-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## <u>ORDER</u>

David Broxterman, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 9). Mr. Broxterman filed a reply. (Doc. 11). Upon consideration, the petition is **DENIED**.

## I.    Procedural History

After two mistrials, a state-court jury convicted Mr. Broxterman of one count of scheme to defraud.[1] (Doc. 10-2, Ex. 2, at 619). The trial court sentenced Mr. Broxterman to five years in prison followed by a twenty-year term of supervised release. (*Id*. at 786). The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 10-3, Ex. 9). Mr. Broxterman unsuccessfully sought postconviction relief under Florida Rule of

---

[1] The first mistrial resulted from a hung jury; the second was declared after a witness referred to the previous trial during her testimony. (Doc. 10-2, Ex. 2, at 1521-22, 2084-85).

Criminal Procedure 3.850, (*id.*, Ex. 11, at 37, 58), and the state appellate court *per curiam* affirmed the denial of relief, (*id.*, Ex. 14). This federal habeas petition followed. (Doc. 1).

## II.    Facts; Trial Testimony

In the fall of 2009, Mr. Broxterman applied for a full-time faculty position in the "business program" at Polk State College. (Doc. 10-3, Ex. 5, at 196). At the time, he was an adjunct instructor at the school. (*Id.* at 186). The posting for the faculty position "include[d] a requirement for an earned doctorate degree from a regionally accredited institution of higher education." (*Id.* at 174). In his application, Mr. Broxterman claimed that he had obtained a Ph.D. in Business Administration from the University of South Florida ("USF") in 2007. (*Id.* at 175-76). In fact, he had not received a Ph.D. from USF or any other university.[2] (*Id.* at 287). Nevertheless, Mr. Broxterman was hired as a full-time professor at Polk State, serving in that role until the spring of 2014. (*Id.* at 180-81). During his employment as a full-time faculty member, Mr. Broxterman earned a total of approximately $250,000 in salary from the school. (*Id.*)

In April 2014, the administration at Polk State discovered that Mr. Broxterman "did not, in fact, have a Ph.D." (*Id.* at 182). An on-campus meeting was held to discuss the matter. (*Id.*) During the meeting, Mr. Broxterman claimed he had completed his Ph.D. under Professor Michael Kovac, the former Dean of the College of Engineering at USF. (*Id.* at 190, 318). Professor Kovac had retired from USF in 2008 and passed away in 2012. (*Id.* at 318-20). Mr. Broxterman told the administration that he could not find his

---

[2] Mr. Broxterman did receive a bachelor's degree from Wilmington College in 1986 and a master's degree from Webster University in 2000. (Doc. 10-3, Ex. 5, at 436-37).

dissertation, that he did not have "any receipts" to show that he had "paid for the[] classes [he] would have taken," and that he "couldn't remember" who had served on his dissertation committee other than Professor Kovac. (*Id.* at 198-99). He also claimed that he had defended his dissertation in a "one-of-a-kind classroom" on the Lakeland campus of Polk State. (*Id.* at 200). This classroom had a "raised stage" and "theater-type seating," making it "the only classroom of its type" on campus. (*Id.*) College records contained no indication that Mr. Broxterman, Professor Kovac, or USF had ever reserved the room. (*Id.* at 200-01).

Polk State suspended Mr. Broxterman pending further investigation. (*Id.* at 184). On May 2, 2014, David Lyon—an "economic crime[s] investigator" with the State Attorney's Office—met with Mr. Broxterman and his attorney. (*Id.* at 214, 217). During the meeting, Mr. Broxterman claimed he had first met Professor Kovac in the parking lot of the Moffitt Cancer Center in the summer of 2006. (*Id.* at 221). According to Mr. Broxterman, Professor Kovac initially offered him entrance to the USF Ph.D. program for $6,200, but he "negotiated the price of it down to $5,000 if he paid cash." (*Id.*) Mr. Broxterman said he did not have a receipt or any "bank records" to corroborate his story. (*Id.* at 222). He also claimed that he was "currently looking for" his dissertation, and that he did not "walk in the [USF] graduation ceremony" because "his father became ill." (*Id.*)

One week later, Mr. Lyon spoke to Mr. Broxterman over the phone. (*Id.* at 233-34). Mr. Broxterman asked whether he could "get some items from [his Polk State] office." (*Id.*) Mr. Lyon denied the request because he was in the middle of obtaining a search

warrant for the office. (*Id.*) Mr. Broxterman became upset and claimed that he "was just one dissertation short of a Ph.D." (*Id.* at 234).

Three days after this conversation, Mr. Lyon executed the search warrant at Mr. Broxterman's office. (*Id.* at 224). Mr. Lyon found a fake USF diploma hanging on the wall. (*Id.* at 225-26). The diploma was printed on copy paper, misspelled "Board" as "B-A-O-R-D," and indicated that Mr. Broxterman graduated "cum laude." (*Id.* at 227-28, 279-80). USF Ph.D. students do not receive Latin honors at graduation. (*Id.* at 279). Mr. Lyon also found a USF Bulls helmet in the office. (*Id.* at 230). Inside the helmet was the inscription, "Broxterman, Ph.D., May 2007, University of South Florida." (*Id.*) The date on the fake diploma, by contrast, was March 2007. (*Id.* at 230-31). Mr. Lyon did not find "any evidence of a dissertation" in the office. (*Id.* at 234-35).

Subsequent investigation revealed that Professor Kovac did not become a patient at Moffitt Cancer Center until December 2009, over three years after the alleged parking-lot meeting between him and Mr. Broxterman. (*Id.* at 237). Moreover, in August 2007—several months after he allegedly received his Ph.D. from USF—Mr. Broxterman contacted Capella University, an online college where he had taken several courses. (*Id.* at 297, 440-41). He submitted a request for "recognition" that he had "completed [the] comprehensive exam and [was] moving into the dissertation phase" of the Ph.D. program. (*Id.* at 308). The college denied the request because Mr. Broxterman "had not been active in a course since [w]inter 2005." (*Id.* at 309-10). Shortly after Mr. Broxterman was suspended from Polk State in May 2014, he reached out to Capella University again. (*Id.* at 313). This time, he submitted a "road map request," indicating that he wished to resume his studies at the

4

college. (*Id.* at 313). Mr. Broxterman never received a Ph.D. from Capella University. (*Id.* at 316).

Sharon Kovac was married to Professor Kovac for forty-seven years before he passed away. (*Id.* at 318). She testified at trial that (1) she did not believe her husband visited the Moffitt Cancer Center in 2006, (2) she did not know Mr. Broxterman and had never heard her husband "talk about him or reference him in any way," (3) she never saw Mr. Broxterman's name on any documents her husband kept at the house, (4) money was never "an issue in [the] household" from 2005 until her husband's passing, and (5) she never saw her husband "come home with $5,000 cash." (*Id.* at 320-22).

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Broxterman's conviction and sentence without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## IV.    Discussion

### A.    Mootness

Although Mr. Broxterman was in the custody of the Florida Department of Corrections when he filed his § 2254 petition, he was subsequently released from incarceration and began serving his twenty-year term of supervised release in April 2021. (Doc. 1 at 1; Doc. 8). Because Mr. Broxterman remains on supervised release, this case is not moot, and the Court proceeds to the merits of the petition. *See Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995) (holding that habeas appeal was "not moot" because petitioner was "still serving his term of supervised release, which is part of his sentence and involves some restrictions upon his liberty"); *see also Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) ("Completion of a criminal sentence does not render a petition for habeas relief moot, because the ongoing collateral consequences of a wrongful conviction, such as the possible enhancement of a later criminal sentence on the basis of the earlier wrongful conviction, satisfy the case-or-controversy jurisdictional requirement of Article III of the Constitution.").

### B.    Ground One—Exclusion of Audit Report

Mr. Broxterman contends that the trial court violated his Sixth Amendment right to confront witnesses by excluding a portion of a 2015 audit report on Polk State. (Doc. 1 at 5; Doc. 2 at 5). The report—which was issued after Mr. Broxterman was charged—explained that the auditors had discovered five employees whose "personnel file[s] did not contain adequate evidence of the verification of educational requirements." (Doc. 10-2, Ex. 2, at 567). Following this discovery, Polk State "obtained original transcripts supporting

7

three of the employees' qualifications." (*Id.*) Another employee's "qualifications were verified by an independent clearinghouse." (*Id.*) The college "did not obtain transcripts" for the fifth employee because "the employee was no longer employed with the [c]ollege." (*Id.*) The report separately discussed Mr. Broxterman's arrest. (*Id.*) Ultimately, the auditors recommended that Polk State "enhance its procedures to provide for the proper verification of compliance with educational requirements for each job applicant prior to offering employment." (*Id.*)

Mr. Broxterman claims that the audit report "was relevant to show bias on the part of Polk State in that even though there were five other employees who did not have verification of their educational requirements, none of those employees were disciplined or arrested." (Doc. 2 at 6). Thus, according to Mr. Broxterman, the "exclusion of th[is] evidence deprived [him] of the ability to conduct a full and fair cross examination of" the State's witnesses. (*Id.* at 7).

The trial court ruled that this portion of the audit report was "not coming in for any purpose." (Doc. 10-3, Ex. 5, at 163). It explained:

> THE COURT: I cannot find any relevance to this trial in that document. Because what this document appears to be, and this document was prepared somewhere in 2015. I believe it was well after the charges in this case. But the reality is—what it talks about is the charges that involve—would involve Mr. Broxterman at this point in time, I presume, although it doesn't say him by name in this thing. It talks about transcripts, and it does talk about [how] the college apparently is going to change their procedure to get original transcripts from whatever university, as opposed to just letting the individual applicant supply the transcripts, I suppose[]. But I can't find anything of any relevance to this case in that.

I mean, I don't think it does—there's nothing that it does, and there is no— you know, obviously the witnesses in this case didn't prepare this document, number one.

Number two, I don't know of any impeach—anything that's of impeachment value in this at all. In fact, the only thing that this really does is suggest to the jury, if it were to be asked in its entirety, this document, was that, well, in effect the college should have done it—did it one way, should have done it another way, so it's the college's fault. That's kind of what I'm getting out of this, which is totally inappropriate for an argument in this case, because it has nothing to do with either the State's case in chief or the Defense's—the defense.

It just suggests that maybe, you know, it doesn't really matter if there was a legal violation, that really the victim is at fault. That's kind of what I get out of it.

(*Id.* at 161-63).

The exclusion of the audit report did not violate the Confrontation Clause. "While the [trial] court has discretionary authority to rule on the admissibility of evidence, including the power to limit cross-examination, this discretion is limited by the guarantee of the Sixth Amendment's Confrontation Clause that a criminal defendant has the right to cross-examine prosecutorial witnesses." *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009). But "the mere fact that [a defendant] sought to explore bias on the part of a prosecution witness does not automatically void the court's ability to limit cross-examination." *Id.* at 1296. "This is so because the defendant is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Id.* Thus, "a defendant can only cross-examine a prosecution witness if the information sought to be elicited [is] relevant." *Id.* And the trial court "retains wide latitude insofar as the Confrontation Clause

is concerned to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Lyons*, 403 F.3d 1248, 1255-56 (11th Cir. 2005).

The audit report was irrelevant to the issues in this case. Mr. Broxterman was charged with defrauding Polk State by falsely claiming that he had earned a Ph.D. Whether *other* Polk State employees obtained employment by misrepresenting *their* educational credentials had no bearing on whether Mr. Broxterman committed fraud. *See* Fla. Stat. § 90.401 ("Relevant evidence is evidence tending to prove or disprove a material fact."). And the audit report did not establish that any employee other than Mr. Broxterman lied about their educational background. Indeed, Polk State ultimately verified the qualifications of four of the five employees with incomplete "personnel file[s]"; the fifth was not investigated further because he had left the school. (Doc. 10-2, Ex. 2, at 567). Thus, because the audit report was irrelevant, Mr. Broxterman's Confrontation Clause challenge fails. *See Jones v. Goodwin*, 982 F.2d 464, 469 (11th Cir. 1993) ("[T]he Sixth Amendment only protects cross-examination that is relevant." (emphasis omitted)).

Mr. Broxterman contends that the audit report shows Polk State's "bias" against him because the "five other employees who did not have verification of their educational requirements . . . were [not] disciplined or arrested." (Doc. 2 at 6). Again, there is no evidence that these five employees falsified their educational credentials. By contrast, the prosecution presented ample evidence that Mr. Broxterman lied to Polk State about obtaining a Ph.D. Thus, the college's failure to discipline the five employees does not show

that it was biased against Mr. Broxterman. *See Williams v. State*, 912 So. 2d 66, 68 (Fla. 4th DCA 2005) ("Matters that demonstrate bias [on the part of a witness] include prejudice, an interest in the outcome of a case, and any motivation for a witness to testify untruthfully.").

Finally, as the trial court explained, the audit report might have suggested to the jury that Polk State—the victim of Mr. Broxterman's fraud—was "at fault" for failing to verify its employees' credentials. (Doc. 10-3, Ex. 5, at 162-63). Such an argument would have been "inappropriate" in this case, which concerned whether Mr. Broxterman defrauded Polk State. (*Id.*) Accordingly, the decision to exclude the report was consistent with the trial court's "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination based on concerns about . . . confusion of the issues." *Lyons*, 403 F.3d at 1255; *see also United States v. Mastin*, 972 F.3d 1230, 1240 (11th Cir. 2020) (holding that trial court did not violate Confrontation Clause because "the questions [defendant] wished to ask would not have been probative of any bias or lack of truthfulness; they would have confused the issues").

For all these reasons, Mr. Broxterman is not entitled to relief on Ground One.[3]

### C.    Ground Two—Sufficiency of the Evidence

Mr. Broxterman contends that the trial court violated his right to due process by denying his motion for judgment of acquittal. (Doc. 1 at 7; Doc. 2 at 8). He claims that the

---

[3] Mr. Broxterman appears to contend that the exclusion of the audit report also violated his right to due process. (Doc. 1 at 5). Because the trial court properly excluded this evidence, Mr. Broxterman cannot show that the challenged evidentiary ruling "so infused the trial with unfairness as to deny due process of law." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014).

prosecution failed to establish his "fraudulent intent," and that there was "no direct evidence" that he lacked "a good faith belief that he had the right to possess the money of Polk State." (Doc. 1 at 7).

Mr. Broxterman is not entitled to relief on his sufficiency challenge. Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Consistent with AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Mr. Broxterman fails to show that the state court's rejection of his sufficiency challenge was "objectively unreasonable." *Id.* As noted above, Mr. Broxterman was charged with one count of scheme to defraud. That offense includes the following elements: "(1) [e]ngaging in or furthering a systematic, ongoing course of conduct (2) with

12

(a) intent to defraud, or (b) intent to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of a future act, (3) resulting in temporarily or permanently depriving any person of the right to property or a benefit therefrom, or appropriating the property to one's own use or to the use of another person not entitled thereto." *Pizzo v. State*, 945 So. 2d 1203, 1207 (Fla. 2006). "Proof of mental intent is seldom accomplished by direct evidence; consequently, the absence of direct proof on the question of the defendant's mental intent should rarely, if ever, result in a judgment of acquittal." *Ehrlich v. State*, 742 So. 2d 447, 450-51 (Fla. 4th DCA 1999).

The jury heard ample evidence of Mr. Broxterman's intent to defraud. In 2009, Polk State advertised an opening for a "business administration faculty position." (Doc. 10-3, Ex. 5, at 174). The posting made clear that applicants would not be considered unless they had a "doctorate degree from a regionally accredited institution of higher education." (*Id.*) When he applied for the position, Mr. Broxterman falsely stated that he had obtained a Ph.D. from USF two years earlier. (*Id.* at 175-76, 287). The prosecution presented abundant evidence that Mr. Broxterman knew he had not earned a Ph.D. from USF or any other university. During his meeting with the Polk State administration, he said that he could not find his dissertation, that he did not have "any receipts" to show he had "paid for the[] classes [he] would have taken," and that he could not name any member of his dissertation committee other than Professor Kovac, the former Dean of the College of Engineering at USF. (*Id.* at 198-99, 318). Although he claimed to have defended his dissertation in a "one-of-a-kind classroom" at Polk State, there was no evidence that Mr. Broxterman, Professor Kovac, or USF had ever reserved the room. (*Id.* at 200-01). Moreover, after his suspension

13

from Polk State, Mr. Broxterman told law enforcement that he was "was just one dissertation short of a Ph.D." (*Id.* at 234). In addition, the USF diploma in Mr. Broxterman's office was obviously fake—it was printed on copy paper and misspelled "Board" as "B-A-O-R-D." (*Id.* at 227-28). Based on this evidence, a rational jury could find beyond a reasonable doubt that Mr. Broxterman intended to defraud Polk State by falsely claiming to have earned a Ph.D.

A rational jury could also reject Mr. Broxterman's good-faith defense. The trial court instructed the jury that "[i]t is a defense to the charge of scheme to defraud if [Mr. Broxterman] had an honest, good faith belief that he had the right to possess the money of Polk State." (*Id.* at 670). At trial, Mr. Broxterman did not dispute that he had never earned a Ph.D. Instead, he claimed that he honestly (albeit mistakenly) believed he had obtained a Ph.D. through his dealings with Professor Kovac. (*Id.* at 650-53, 657-58). But the prosecution presented substantial evidence contradicting this defense. For example, Mr. Broxterman claimed he met Professor Kovac at the Moffitt Cancer Center in the summer of 2006, but Professor Kovac did not become a patient there until December 2009—over two years after Mr. Broxterman had allegedly earned his Ph.D. (*Id.* at 221, 237). Furthermore, the jury "was entitled to discredit" Mr. Broxterman's claim that Professor Kovac agreed to admit him to a USF Ph.D. program in exchange for a $5,000 cash payment. *Conklin v. Schofield*, 366 F.3d 1191, 1200 (11th Cir. 2004). Indeed, "[t]he jury's decision not to believe [Mr. Broxterman's] version of the events [was] supported by several facts," including that Professor Kovac's wife had never heard of Mr. Broxterman and that the

Kovacs were not facing financial problems at the time of the alleged transaction. *Id.* at 1201.

Because a rational jury could find beyond a reasonable doubt that Mr. Broxterman intended to defraud Polk State, the trial court reasonably rejected his sufficiency challenge. Accordingly, Ground Two is denied.

### D.      Ground Three—Double Jeopardy

Mr. Broxterman contends that the trial court erred in denying his motion to dismiss the charge against him on double jeopardy grounds. (Doc. 1 at 8). Mr. Broxterman's first trial resulted in a mistrial after the jury was unable to reach a verdict. (Doc. 10-2, Ex. 2, at 2084-85). During the second trial, Sharon Kovac—Professor Kovac's wife—referred to "the last trial" in her testimony. (*Id.* at 1521). Mr. Broxterman immediately moved for a mistrial, arguing that the "jury now knows that there was a previous trial in this case." (*Id.*) The prosecutor represented that he had instructed Ms. Kovac not to mention the first trial during her testimony. (*Id.* at 1521-22). He also stated that he "would love to finish this trial today," but that he "really [didn't] know what to do." (*Id.* at 1522). The trial court granted the motion for mistrial. (*Id.*)

During the third trial, Mr. Broxterman's counsel asked Ms. Kovac outside the presence of the jury whether she had been "told last time not to mention the previous trial." (Doc. 10-3, Ex. 5, at 272). She responded, "No." (*Id.*) The court then asked the prosecutor to confirm that, before the second trial, he had instructed his witnesses—including Ms. Kovac—not to mention the first trial. (*Id.* at 273). The prosecutor answered in the affirmative. (*Id.* at 274). Mr. Broxterman subsequently moved to dismiss, arguing that "the

third retrial of this case constitute[d] a double [j]eopardy violation" because the prosecutor allegedly failed to instruct Ms. Kovac to refrain from mentioning the first trial. (Doc. 10-2, Ex. 2, at 587).

The trial court denied the motion. (*Id.* at 1567). It noted that the prosecutor had represented that he "did talk to [Ms. Kovac] prior to the second trial and did tell her not to mention" the first trial. (*Id.* at 1566). The court asked the prosecutor whether its recollection was correct. (*Id.*) The prosecutor said, "No, you're not wrong, Your Honor. I spoke with her prior to that." (*Id.*) The court then denied the motion to dismiss "based on everything we have put on the record here," including the prosecutor's "statements . . . as an officer of the [c]ourt." (*Id.* at 1567). The court explained that Ms. Kovac "was a very elderly and very nice lady," but that "lay folks sometimes don't really comprehend . . . what lawyers and/or judges sometimes tell them about things like that." (*Id.*)

The denial of the motion to dismiss was reasonable. "The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976). It does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). For example, "[t]he Double Jeopardy Clause does not bar retrial after the grant of a defendant's motion for mistrial unless the prosecution intentionally goaded the defendant into moving for a mistrial." *United States v. Vallejo*, 297 F.3d 1154, 1162 (11th Cir. 2002). "Mere overreaching or bad faith does not implicate double jeopardy unless the prosecutor actually intended to provoke

the defendant's motion [for mistrial]." *United States v. Shelley*, 405 F.3d 1195, 1200 (11th Cir. 2005). "The court's determination of the prosecutor's intent is a finding of fact." *Vallejo*, 297 F.3d at 1162.

Here, the third trial took place after Mr. Broxterman successfully moved for a mistrial. Thus, double jeopardy did not bar the retrial "unless the prosecution intentionally goaded [Mr. Broxterman] into moving for a mistrial." *Id.* Mr. Broxterman argues that the prosecution intentionally provoked the motion for mistrial by failing to "specifically instruct[] Ms. Kovac not to mention the [first] trial." (Doc. 2 at 12-13). The trial court found, however, that the prosecutor *did* instruct Ms. Kovac to refrain from mentioning the first trial. (Doc. 10-2, Ex. 2, at 1567). Indeed, it credited the prosecutor's statements "as an officer of the [c]ourt" and suggested that Ms. Kovac may have misunderstood his instructions. (*Id.*) Those factual findings bind this Court unless Mr. Broxterman shows by "clear and convincing evidence" that they were incorrect. 28 U.S.C. § 2254(e)(1). He has not done so.

Having found that the prosecutor instructed Ms. Kovac to refrain from mentioning the first trial, the trial court had no basis to conclude that "the prosecutor actually intended to provoke" Mr. Broxterman's motion for mistrial. *Shelley*, 405 F.3d at 1200; *see also Martinez v. Dixon,* No. 22-61894-CIV, 2023 WL 4456838, at *7 (S.D. Fla. July 11, 2023) ("Since we have *no* evidence that the prosecutor purposely incited a mistrial, the state postconviction court reasonably concluded that jeopardy hadn't attached after [petitioner's] first trial."). And without "deliberate prosecutorial misconduct," double jeopardy does not bar a retrial after the grant of a defendant's motion for mistrial. *Vallejo*,

17

297 F.3d at 1163. Accordingly, the trial court reasonably concluded that double jeopardy did not bar Mr. Broxterman's third trial. Ground Three is denied.

### E.    Ground Four—Exclusion of Recorded Interview

Mr. Broxterman contends that the trial court violated his right to due process by declining to admit the recording of his May 2, 2014 interview with Mr. Lyon, the economic crimes investigator. (Doc. 1 at 10; Doc. 2 at 13-14). On direct examination, Mr. Lyon testified to the contents of the interview, including Mr. Broxterman's statement that he had met Professor Kovac at the Moffitt Cancer Center in the summer of 2006. (Doc 10-3, Ex. 5, at 221). Mr. Broxterman objected on the ground that "the tape [of the interview] is [the] best evidence of what was stated[,] and unless it is proffered or played, there should be no further inquiry as to . . . what was stated in that interview." (*Id.* at 219-20). The trial court overruled the objection, explaining that Mr. Lyon could "testify live . . . to what" Mr. Broxterman said, and that counsel could impeach Mr. Lyon with the recording "if there's something in there that you think is . . . not consistent with what he is saying today." (*Id.* at 220).

After the prosecution rested, Mr. Broxterman indicated that he wished to re-call Mr. Lyon. (*Id.* at 503). The court explained that Mr. Broxterman could not introduce the recorded interview "as substantive evidence" because it was "self-serving hearsay," but he could use it to "impeach[]" Mr. Lyon. (*Id.* at 504). Mr. Broxterman responded that, because the recording had been "introduced [by the State] in the previous trial," "that ruling [was] now law [of] the case." (*Id.* at 504-05). The court disagreed, noting that the prosecution could introduce the recording "as a party opponent admission," but "the law [was]

absolutely clear you [*i.e.*, Mr. Broxterman] cannot introduce it on your side." (*Id.* at 506). The court reiterated that Mr. Broxterman could use the recording to "impeach [Mr. Lyon]" if "he says something you think is inconsistent." (*Id.*) Mr. Broxterman ultimately did not impeach Mr. Lyon with the recording.

Mr. Broxterman argues that the trial court violated his due process rights by overruling his "best evidence objection" to Mr. Lyon's testimony about the interview. (Doc. 2 at 17). He also contends that, "because the recording [of the interview] was admitted at the second trial, it should have been admitted in the third trial." (*Id.* at 16).

"[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor*, 760 F.3d at 1295. "Indeed, in a habeas corpus action brought by a state prisoner, [the court's] authority is severely restricted in the review of state evidentiary rulings." *Id.* "Habeas relief is warranted only when the error so infused the trial with unfairness as to deny due process of law." *Id.*; *see also Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) ("We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial."). "Fundamental fairness is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986).

Mr. Broxterman has not shown that the challenged evidentiary rulings "so infused the trial with unfairness as to deny due process of law." *Taylor*, 760 F.3d at 1295. As an initial matter, the best evidence rule did not require admission of the recording. The best evidence rule provides that, "when the contents of a writing, recording[,] or photograph are

being proved, the original must be offered unless a statutory excuse for the lack of an original exists." *Hernandez v. State*, 328 So. 3d 1064, 1066 (Fla. 3d DCA 2021). "The best evidence rule, however, requires the introduction of original recordings, if at all, only when the content of the recording itself is a factual issue relevant to the use." *United States v. Howard*, 953 F.2d 610, 612 (11th Cir. 1992). Thus, where "the proffered testimony [is] offered not to prove the content of the tapes, but rather, the content of the conversations, the best evidence rule does not apply." *Id.* Put differently, "testimony describing events that were observed live and recorded do[es] not violate the best evidence rule, even if the recording is not admitted in evidence." *J.J. v. State*, 170 So. 3d 861, 863 (Fla. 3d DCA 2015).

Here, Mr. Lyon's testimony was not offered to prove the content of the recording. Instead, Mr. Lyon testified to his recollection of the conversation he had with Mr. Broxterman. The best evidence rule "has no application" where, as here, a party "calls a participant in or observer of [a recorded] conversation to testify to it." *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996); *see also United States v. Holland*, 223 F. App'x 891, 898 (11th Cir. 2007) ("Here, Valoze's testimony was not offered to prove the contents of the tape recording; Valoze was testifying as to his recollection of the conversation with Holland, based on his own personal knowledge, and the fact that a corroborative tape recording of that phone conversation was made is inconsequential. Under such circumstances the Best Evidence Rule is not implicated at all."); *United States v. Fagan*, 821 F.2d 1002, 1009 n.1 (5th Cir. 1987) ("The prosecution was not trying to show the contents of the *tape*, but rather the contents of the *conversation*, and, therefore . .

. the best evidence rule was inapplicable."). Accordingly, the trial court did not err in overruling Mr. Broxterman's best evidence objection.

Nor did the trial court err in rejecting Mr. Broxterman's argument that the law-of-the-case doctrine required admission of the recording. Under Florida law, "[t]he law of the case doctrine requires that questions of law *actually decided on appeal* must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *McCray v. State*, 230 So. 3d 495, 498 (Fla. 2d DCA 2017) (emphasis added). "The law of the case doctrine applies only to issues actually considered and decided in a prior appeal involving the same case." *Id.* Thus, "the doctrine does not apply to trial court orders." *Hentze v. Denys*, 88 So. 3d 307, 310 (Fla. 1st DCA 2012); *see also Empire Club, Inc. v. Hernandez*, 974 So. 2d 447, 449 (Fla. 2d DCA 2007) ("Law of the case is not established by a trial court's initial ruling but rather by an appellate decision that binds a subsequent proceeding."). Because the admissibility of the recording was not "actually considered and decided in a prior appeal involving the same case," the trial court did not err in rejecting Mr. Broxterman's law-of-the-case argument. *McCray*, 230 So. 3d at 498.

Ground Four is denied.

**F.     Ground Five—Shifting the Burden of Proof**

Mr. Broxterman contends that the trial court violated his right to due process by allowing the prosecutor to make "improper comments during closing argument" that "shifted the burden of proof to" him. (Doc. 2 at 18-19). The challenged comments concerned the May 2, 2014 interview between Mr. Lyon and Mr. Broxterman. Specifically, the prosecutor told the jury:

> [H]e gets into a meeting with David Lyon, in which he's informed he is part of a criminal investigation. He brings an attorney with him. And essentially the purpose of that investigation and that meeting is, you know, to find out what is going on. David Broxterman, you don't have a degree. You said you have a degree. Why did you do that? And at that meeting, he doesn't bring this receipt. He doesn't bring this disk. He doesn't bring a PowerPoint.

(Doc. 10-3, Ex. 5, at 640-41). The prosecutor was referring to a "receipt" that Mr. Broxterman provided to Mr. Lyon several days after the May 2 interview. (*Id.* at 235). The receipt purported to memorialize Mr. Broxterman's cash payment to Professor Kovac. (*Id.* at 458-61). The "disk" contained a "PowerPoint presentation" that allegedly included an "outline" of Mr. Broxterman's dissertation. (*Id.* at 471-72). The disk was not produced until the criminal case "was pending." (Doc. 10-2, Ex. 2, at 1950).

Immediately after the prosecutor made the challenged remarks, Mr. Broxterman objected. He argued that the comments "improperly shift[ed]" the burden of proof to him and "requir[ed] [him] to prove his innocence." (Doc. 10-3, Ex. 5, at 641). The trial court overruled the objection. (*Id.*) In his federal habeas petition, Mr. Broxterman argues that, by referring to his failure to bring the receipt and the disk to the May 2 meeting, the prosecution improperly "suggested [he] had to disprove or rebut the State's case with evidence that produced a reasonable doubt." (Doc. 2 at 19-20).

Mr. Broxterman is not entitled to relief on this claim. "[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the

defendant." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id.*

Here, even assuming that the prosecution improperly shifted the burden of proof to Mr. Broxterman, he cannot show that the challenged remarks "prejudicially affect[ed] [his] substantial rights." *Id.* After closing arguments, the trial court properly instructed the jury on the prosecution's burden of proof, explaining that (1) the presumption of innocence "stays with the defendant as to each material allegation in the Information, through each stage of the trial, unless it's been overcome by the evidence to the exclusion of and beyond a reasonable doubt"; (2) "the State has the burden of proving [that] the crime with which the defendant is charged was committed and that the defendant is the person who committed the crime"; and (3) "[t]he defendant is not required to present evidence or prove anything." (Doc. 10-3, Ex. 5, at 674-75). "[T]he prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992).

Moreover, as explained above, the prosecution presented "sufficient independent evidence of [Mr. Broxterman's] guilt." *Eckhardt*, 466 F.3d at 947. Thus, the Court "cannot say, based on the strength and sufficiency of the evidence against [Mr. Broxterman], that the outcome of his case would have been different absent the supposedly improper remarks by the" prosecutor. *United States v. Johnson*, 348 F. App'x 468, 470 (11th Cir. 2009); *see also United States v. Schatz*, 545 F. App'x 934, 938 (11th Cir. 2013) ("Even assuming the

government's comments at closing argument were improper, we conclude any error was harmless because there was sufficient independent evidence of [defendant's] guilt."). For all these reasons, Ground Five is denied.[4]

### G. Ground Six—Denial of Request for Pretrial Diversion

In his petition, Mr. Broxterman contends that the trial court violated his rights to due process and equal protection by denying his request to enter Veterans Treatment Court, a pretrial diversion program.[5] (Doc. 2 at 21-26). In his reply, Mr. Broxterman indicates that he "Concedes Count Six (6)." (Doc. 11 at 15). Because it appears that Mr. Broxterman has withdrawn Ground Six from consideration, the Court need not address it here. *See Evans v. McNeil*, No. 3:07-cv-98-LAC-EMT, 2009 WL 3163214, at *17 (N.D. Fla. Sept. 30, 2009) ("In Petitioner's reply brief, he expressly withdraws Ground Three from consideration. Therefore, the court need not consider this claim."), *adopted by* 2009 WL 3710725 (N.D. Fla. Nov. 3, 2009).

Even if Mr. Broxterman had not waived this claim, he would not be entitled to relief. Florida law contemplates the creation of several "pretrial intervention programs, including the veterans treatment court programs for persons charged with qualifying felonies." *State v. Mancuso*, 355 So. 3d 942, 946 (Fla. 4th DCA 2023). Under Florida law, veterans

---

[4] Mr. Broxterman also contends that the reference to his attorney's presence during the interview "suggested [he] had a consciousness of guilt . . . in violation of his Sixth Amendment right to counsel." (Doc. 2 at 20-21). But the "Supreme Court has never held that commenting on a defendant's decision to retain counsel violates any constitutional right." *Kennedy v. Johnson*, No. 14-cv-8129-JVS-RZ, 2015 WL 2371416, at *10 (C.D. Cal. Apr. 6, 2015), *adopted by* 2015 WL 2381044 (C.D. Cal. May 18, 2015). Even if this comment were improper, Mr. Broxterman cannot show "a reasonable probability [] that, but for the remark[], the outcome of the trial would have been different." *Eckhardt*, 466 F.3d at 947.

[5] Mr. Broxterman served in the Army for twenty-four years. (Doc. 10-3, Ex. 5, at 431).

suffering from "a military service-related mental illness, traumatic brain injury, substance abuse disorder, or psychological problem" are "eligible for voluntary admission into a pretrial veterans' treatment intervention program approved by the chief judge of the circuit." Fla. Stat. § 948.08(7)(a) (2017). The statute requires "[t]he court [to] dismiss the charges upon a finding that the defendant has successfully completed the pretrial intervention program." *Id.* § 948.08(7)(c).

Mr. Broxterman moved for admission to Veterans Treatment Court. (Doc. 10-2, Ex. 2, at 138-40). The trial court denied the motion on the grounds that the Tenth Judicial Circuit did not yet "have a veterans' court." (*Id.* at 1066). In his federal habeas petition, Mr. Broxterman contends that his rights to due process and equal protection were violated because "the sole reason" he was denied entry to Veterans Treatment Court was that "a veterans' program had not yet been specifically created in the 10th Circuit." (Doc. 2 at 25). He claims that, "had [he] been prosecuted in one of the 13 Circuits that ha[d] a veterans' court, his case would have resulted in a different outcome." (*Id.* at 26).

The denial of Mr. Broxterman's request for pretrial diversion did not violate his constitutional rights. As an initial matter, a defendant "has no right to be placed in pretrial diversion." *United States v. Richardson*, 856 F.2d 644, 647 (4th Cir. 1988); *see also United States v. Hicks*, 693 F.2d 32, 34 (5th Cir. 1982) (noting that a defendant "has no right be placed in" a pretrial diversion program). Moreover, Mr. Broxterman has not cited—and this Court cannot locate—any authority for the proposition that the Equal Protection Clause is violated simply because a defendant is denied access to a pretrial diversion program while other, similarly situated offenders in different geographic areas are able to take

advantage of the program. Courts that have considered similar arguments have consistently rejected them. *See State v. Harner*, 103 P.3d 738, 742 (Wash. 2004) ("We hold the absence of a drug court in a county where a defendant is charged does not violate that defendant's right to equal protection."); *Jim v. State*, 911 So. 2d 658, 660 (Miss. Ct. App. 2005) ("[Defendant] does not have a right to transfer his case to drug court nor does he have a[n] equal protection claim since no one has the right to attend the drug court."); *People v. Superior Ct. (Skoblov)*, 195 Cal. App. 3d 1209, 1214 (Cal. Ct. App. 1987) ("In our view neither equal protection principles nor any other constitutional mandate require the Legislature to make diversion uniformly available throughout the state.").

Accordingly, even if Mr. Broxterman had not withdrawn Ground Six, he would not be entitled to relief on his claim concerning the denial of entry to Veterans Treatment Court.

## H.    Ground Seven—Actual Innocence

Finally, Mr. Broxterman appears to raise a freestanding claim of actual innocence, arguing that his conviction and sentence "must be reversed" because he is "ACTUALLY INNOCENT of [f]raud." (Doc. 2 at 32). Eleventh Circuit "precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019); *see also Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1273 (11th Cir. 2010) ("[An] assertion of actual innocence, by itself, is not enough."). Because Mr. Broxterman fails to establish "an independent constitutional claim, his freestanding actual innocence claim is

not cognizable" on federal habeas review. *Collins v. Sec'y, Dep't of Corr.*, 809 F. App'x 694, 696 (11th Cir. 2020). Thus, Ground Seven is denied.

Accordingly, the Court **ORDERS**:

1. Mr. Broxterman's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Broxterman and to **CLOSE** this case.

3. Mr. Broxterman is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Broxterman must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Broxterman has not made the requisite showing. Because Mr. Broxterman is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on September 26, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE